Lin Y. Chan
Katherine Lubin Benson
Jules A. Ross
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Phone: (415) 956-1000

Jason Lichtman
Emily N. Harwell
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Phone:  (212) 355-9500

*Counsel for Plaintiff and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| YOSH HAN,<br><br>            Plaintiff,<br><br>vs.<br><br>INTERNATIONAL FLAVORS & FRAGRANCES, INC.; GIVAUDAN SA; GIVAUDAN FRAGRANCES CORPORATION; GIVAUDAN FLAVORS CORPORATION; GIVAUDAN ROURE (UNITED STATES) INC.; UNGERER & COMPANY INC.; CUSTOM ESSENCE INC.; SYMRISE AG; SYMRISE INC.; SYMRISE US LLC; DSM-FIRMENICH AG; FIRMENICH INC.; AND AGILEX FLAVORS & FRAGRANCES, INC.,<br><br>            Defendants. | Case No. 2:23-cv-4147<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     JURISDICTION AND VENUE .............................................................................2

III.    THE PARTIES........................................................................................................3

    A.    PLAINTIFF...................................................................................................3

    B.    DEFENDANTS ............................................................................................3

IV.     FACTUAL ALLEGATIONS .................................................................................5

    A.    The Fragrance and Fragrance Ingredient Market........................................5

    B.    Defendants Conspired to Restrain Trade in the U.S. Fragrance Market. ...............8

    C.    Government Investigations Also Support the Existence of Defendants' Cartel...........................................................................................................12

    D.    "Plus Factors" Render the Fragrance and Fragrance Ingredient Market Susceptible to the Formation and Maintenance of a Cartel. ...................................13

    E.    Defendants Have Ample Motive to Conspire.........................................................17

V.      CLASS ACTION ALLEGATIONS ......................................................................18

        1.    Numerosity (Rule 23(a)(1)) .......................................................................18

        2.    Commonality (Rule 23(a)(2)) ....................................................................18

        3.    Typicality (Rule 23(a)(3)) ..........................................................................19

        4.    Adequacy (Rule 23(a)(4) and 23(g))..........................................................19

        5.    Rule 23(b)(1)...............................................................................................19

        6.    Rule 23(b)(2)...............................................................................................20

        7.    Rule 23(b)(3)...............................................................................................20

VI.     CLAIM FOR VIOLATION OF SECTION ONE OF THE SHERMAN ACT ................20

VII.    FRAUDULENT CONCEALMENT......................................................................21

VIII.   PETITION FOR RELIEF ....................................................................................21

IX.     JURY DEMAND..................................................................................................22

Plaintiff Yosh Han, individually and on behalf of those similarly situated, brings this class action complaint under Section 1 of the Sherman Act, 15 U.S.C § 1, and alleges as follows:

## I.    <u>INTRODUCTION</u>

1.      The global fragrance industry is valued at $13.9 billion per year.  Defendants Firmenich, Givaudan, International Flavors & Fragrances, and Symrise dominate that industry, producing fragrances and fragrance ingredients and controlling more than 60% of the worldwide and U.S. fragrance market.

2.      Fragrance ingredients are ubiquitous and incorporated into virtually every consumer product, including perfumes, candles, deodorants, detergents, cleaning sprays, cosmetics, skin care, and hair products.  But while fragrance ingredients are ubiquitous in products consumers use every day, the fragrance industry is shrouded in secrecy.  Until now.

3.      On March 7, 2023, the European Commission, in collaboration with competition authorities from the United Kingdom, United States, and Switzerland, raided several fragrance manufacturers on concerns that they may be taking part in a cartel for fragrances used in the manufacture of perfumes and consumer products.  The Swiss Competition Commission confirmed that it had raided Defendants Symrise, Givaudan, Firmenich, and International Flavors & Fragrances in conjunction with the European Commission, the U.S. Department of Justice Antitrust Division, and the UK Competition and Markets Authority because "[t]here are suspicions that these undertakings have coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the production of certain fragrances."[1]

4.      These coordinated, multi-national investigations uncovered a cartel in which, as early as 2018, Defendants agreed to restrain trade by artificially stabilizing and increasing prices, artificially restricting output, and allocating the market.  Defendants' agreement increased fragrance and fragrance ingredient prices above competitive levels.  Price trends of fragrance ingredients cannot be explained by other economic factors.  For instance, the price trend of

---

[1] *COMCO Investigates Possible Collusions in the Fragrance Market*, Swiss Competition Comm'n (Mar. 8, 2023), https://www.weko.admin.ch/weko/en/home/medien/press-releases/nsb-news.msg-id-93502.html.

petroleum, a key raw material from which 95% of synthetic fragrance ingredients are derived, does not account for fragrance ingredient price trends:  Fragrance prices stabilized at an increased level starting in 2018 despite decreasing petroleum prices.

5.      As a direct result of Defendants' anticompetitive and unlawful conduct, Plaintiff Yosh Han and Class members paid artificially inflated prices for fragrances and fragrance ingredients during the Class Period from January 1, 2018 through the present and thus suffered antitrust injury to their business or property.

## II.      <u>JURISDICTION AND VENUE</u>

6.      Plaintiff brings this action to recover damages and obtain injunctive relief, including treble damages, costs of suit, and reasonable attorneys' fees, arising from Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

7.      The Court has subject matter jurisdiction pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) and 28 U.S.C. §§ 1331 and 1337.

8.      Defendants are subject to the jurisdiction of this Court because, *inter alia*, each defendant either directly or through the ownership and/or control of their subsidiaries: (a) transacted business throughout the United States, including in this district; (b) participated in the sale and distribution of fragrances and fragrance ingredients throughout the United States, including in this district; (c) had substantial contacts with the United States, including in this district; and/or (d) was engaged in an illegal conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this district.  Defendants' conduct directly targeted the United States fragrance and fragrance ingredient market and were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States.

9.      Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391(b) and (c) because one or more Defendants transacted business in this district and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

### III.     THE PARTIES

#### A.     PLAINTIFF

10.     Plaintiff Yosh Han formulates, manufactures, and sells perfumes.  She is a citizen and resident of the State of California.  During the Class Period, Plaintiff purchased fragrance ingredients from Defendants, including Defendant Givaudan SA, at prices artificially inflated by the cartel.

#### B.     DEFENDANTS

**International Flavors & Fragrances**

11.     Defendant International Flavors & Fragrances, Inc. ("IFF") is an American corporation headquartered in New York, New York at 521 West 57th Street.  Defendant IFF is a public company traded on the New York Stock Exchange under the ticker IFF.  Defendant IFF created and manufactured fragrances and fragrance ingredients sold throughout the United States, including this District, during the Class Period.  It is the single largest fragrance manufacturer in the world.

**Givaudan**

12.     Defendant Givaudan SA is a Swiss corporation headquartered in Vernier, Switzerland at Chemin de la Parfumerie 5, 1214.  Defendant Givaudan SA is a public company.  Defendant Givaudan SA created and manufactured fragrances and fragrance ingredients sold throughout the United States, including this District, during the Class Period.  It is the second largest fragrance manufacturer in the world.

13.     Defendant Givaudan Fragrances Corporation is a United States subsidiary of Givaudan SA headquartered in East Hanover, New Jersey at 717 Ridgedale Ave.  Defendant Givaudan Fragrances Corporation is incorporated in Delaware.

14.     Defendant Givaudan Flavors Corporation is a United States subsidiary of Givaudan SA headquartered in Cincinnati, Ohio at 1199 Edison Drive 1-2.  Defendant Givaudan Flavors Corporation is incorporated in Delaware.

15.     Defendant Givaudan Roure (United States) Inc. is a United States subsidiary of Givaudan SA headquartered in Cincinnati, Ohio at 1199 Edison Drive 1-2.  Defendant Givaudan Roure (United States) Inc. is incorporated in Delaware.

16.     Defendant Ungerer & Company Inc. is a United States subsidiary of Givaudan SA headquartered in Lincoln Park, New Jersey at 4 Ungerer Way.  Defendant Ungerer & Company Inc. is incorporated in Delaware.  On February 20, 2020, Givaudan SA acquired Ungerer & Company Inc.[2]

17.     Defendant Custom Essence Inc. is a United States subsidiary of Givaudan SA headquartered in Somerset, New Jersey at 53 Veronica Avenue.  On December 3, 2021, Givaudan SA acquired Custom Essence Inc.[3]

18.     Defendants Givaudan SA, Givaudan Fragrances Corporation, Givaudan Flavors Corporation, Givaudan Roure (United States) Inc., Ungerer & Company, Inc., and Custom Essence Inc. are collectively referred to as "Givaudan."

**Symrise**

19.     Defendant Symrise AG is a German corporation headquartered in Holzminden, Germany at Mühlenfeldstraße 1 37603.  Defendant Symrise AG is a public company.  Defendant Symrise AG created and manufactured fragrances and fragrance ingredients sold throughout the United States, including this District, during the Class Period.  It is the third largest fragrance manufacturer in the world.

20.     Defendant Symrise Inc. is a United States subsidiary of Symrise AG headquartered in Teterboro, New Jersey at 300 North Street.  Defendant Symrise Inc. is incorporated in Delaware.

---

[2] Press Release, Givaudan, Givaudan Completes Acquisition of Ungerer (Feb. 20, 2020, 18:00 CET), https://www.givaudan.com/media/media-releases/2020/givaudan-completes-acquisition-ungerer.
[3] Press Release, Givaudan, Givaudan Completes the Acquisition of Custom Essence (Dec. 3, 2021, 18:00 CET), https://www.givaudan.com/media/media-releases/2021/givaudan-completes-acquisition-custom-essence.

21.     Defendant Symrise US LLC is a United States subsidiary of Symrise AG headquartered in Teterboro, New Jersey at 300 North Street.  Defendant Symrise US LLC is incorporated in Delaware.

22.     Defendants Symrise AG, Symrise Inc., and Symrise US LLC are collectively referred to as "Symrise."

**Firmenich**

23.     Defendant DSM-Firmenich AG is a Swiss corporation headquartered in Kaiseraugst, Switzerland and Maastricht, Netherlands.  Defendant DSM-Firmenich AG is a public company formed by the merger of DSM and Firmenich International SA on May 9, 2023.[4] Firmenich International SA was a private company before the merger.  Defendant DSM-Firmenich SA created and manufactured fragrances and fragrance ingredients sold throughout the United States, including this District, during the Class Period.  It is the fourth largest fragrance manufacturer in the world.

24.     Defendant Firmenich Inc. is a United States subsidiary of DSM-Firmenich AG headquartered in Plainsboro, New Jersey at 250 Plainsboro Rd.  Defendant Firmenich Inc. is incorporated in Delaware.

25.     Defendant Agilex Flavors & Fragrances, Inc. is a United States subsidiary of DSM-Firmenich AG headquartered in Piscataway, New Jersey at 140 Centennial Ave.  Defendant Agilex Flavors & Fragrances, Inc. is incorporated in Delaware.

26.     Defendants DSM-Firmenich AG, Firmenich Inc., and Agilex Flavors & Fragrances, Inc. are collectively referred to as "Firmenich."

## IV.     FACTUAL ALLEGATIONS

### A.     The Fragrance and Fragrance Ingredient Market

27.     Fragrance is ubiquitous.  Companies incorporate fragrance into virtually every consumer product including perfumes, candles, deodorants, detergents, cleaning sprays,

---

[4] Press Release, Firmenich, Firmenich Completes Merger of Equals With DSM (May 9, 2023), https://www.firmenich.com/company/press-release/firmenich-completes-merger-equals-dsm.

cosmetics, skin care, and hair products.  Manufacturing fragrance for those products is a multi-billion dollar business:  In 2022, the global fragrance market was worth approximately $13.9 billion.[5]

28.     Four companies dominate the worldwide fragrance market: Defendants IFF, Givaudan, Symrise, and Firmenich.  In addition to manufacturing fragrances, these and other fragrance manufacturers also manufacture flavors (additives to improve the taste or smell of food), as well as the aroma molecules and cosmetic ingredients.  These three markets are collectively known as the Aromatic Flavors and Fragrances ("AFF") market.  In 2022, the global AFF market was approximately $40.95 billion.[6]  The four dominant fragrance companies represent 64% of the AFF market: IFF, 22%; Givaudan, 18%; Syrmise, 12%; and Firmenich, 11%.[7]  As of 2021, Defendants controlled more than 70% of the North American fragrance market.[8]

---

[5] Symrise, *Corporate Report 2022* at 121 (Mar. 8, 2023),
https://symrise.com/corporatereport/2022/downloads/SYM_corporatereport_2022_EN.pdf
(converted from Euros to USD).

[6] *Id.*

[7] *Id.*

[8] *The Fragrance Science & Advocacy Council in North America Has Touched its 100-Day Milestone with Defined Key Focus Areas*, FSAC (Sept. 20, 2021),
https://fsac.org/communications/fragrance-science-advocacy-council-north-america-has-touched-its-100-day-milestone.



Source: Symrise, *Corporate Report 2022* 121 (Mar. 8, 2023),
https://symrise.com/corporatereport/2022/downloads/SYM_corporatereport_2022_EN.pdf.

29.     The fragrance market is composed of three major segments: fine fragrances, functional fragrances, and fragrance ingredients.  Fine fragrances give perfumes their scent.  Most perfume brands, however, do not formulate the fine fragrances in their perfumes.  Instead, they hire fragrance manufacturers to create them based on prompts.  Fragrance companies then combine fragrance ingredients—aroma chemicals or essential oils—to formulate and manufacture fine fragrances.

30.     Functional fragrances give personal care and household products their scent.  Products ranging from disinfectant cleaners to shampoos, detergents, and deodorants contain functional fragrances.  Manufacturers specifically formulate these fragrances for use in personal care or household products.  Like perfume brands, consumer product companies typically buy functional fragrances from fragrance manufacturers.

31.     Fragrance ingredients are the raw materials combined to create fine or functional fragrances.  Fragrance manufacturers use the aroma chemicals they produce in their own fragrances, but they also market those ingredients to other manufacturers and distributors.  For

example, perfume brands that formulate and manufacture their own fine fragrances, like Plaintiff, purchase fragrance ingredients.

### B. Defendants Conspired to Restrain Trade in the U.S. Fragrance Market.

32.    Beginning on at least January 1, 2018, through the present, Defendants agreed to fix prices, restrict output, and allocate the market for fragrances and fragrance ingredients sold in the United States.  Such horizontal agreements are a *per se* violation of the antitrust laws.

33.    Circumstantial evidence demonstrates the existence of Defendants' unlawful agreement.

34.    First, the timing of Defendants' public price increase announcements during the Class Period indicates the cartel exists.  The first coordinated price increases occurred in the fall of 2018.  Defendant Symrise reported price increases on August 14, 2018, citing growing raw material costs.[9]  Defendant IFF publicly followed on September 6, 2018, and Defendant Givaudan did the same on October 8, 2018.[10]  Near-simultaneous price increases occurred repeatedly between 2018 and the present.  For instance, Defendants Givaudan, IFF, and Syrmise publically announced price increases in July and August of 2019.[11]  The Defendants again announced

---

[9] *Strong Organic Growth of 9.0% in the First Half of 2018*, Symrise (Aug. 14, 2018), https://www.symrise.com/newsroom/article/strong-organic-growth-of-90-in-the-first-half-of-2018/.

[10] *Transcript: International Flavor & Fragrances Inc. Presents at Barclays Global Consumer Staples Conference*, MarketScreener (Sept. 6, 2018), https://www.marketscreener.com/quote/stock/INTERNATIONAL-FLAVORS-F-13047/news/Transcript-International-Flavors-Fragrances-Inc-Presents-at-Barclays-Global-Consumer-Staples-Co-37949946/; Press Release, Givaudan, 2018 Nine Month Sales (Oct. 8, 2018), https://www.givaudan.com/media/media-releases/2018/2018-nine-month-sales.

[11] *Symrise AG (SYIEF) CEO Heinz-Jürgen Bertram on Q2 2019 Results: Earnings Call Transcript*, Seeking Alpha (Aug. 10, 2019), https://seekingalpha.com/article/4284389-symrise-ag-syief-ceo-heinz-jurgen-bertram-on-q2-2019-results-earningscall-transcript; *International Flavors & Fragrances, Inc. (IFF) CEO Andreas Fibig on Q2 2019 Results - Earnings Call Transcript*, Seeking Alpha (Aug. 6, 2019), https://seekingalpha.com/article/4282370-international-flavors-and-fragrances-inc-iff-ceo-andreas-fibig-on-q2-2019-results-earnings; *Givaudan SA (GVDBF) CEO Gilles Andrier on Q2 2019 Results - Earnings Call Transcript*, Seeking Alpha (July 18, 2019), https://seekingalpha.com/article/4275832-givaudan-sa-gvdbf-ceo-gilles-andrier-on-q2-2019-results-earnings-call-transcript.

increases in short succession during 2022:  Defendant IFF announced further fragrance price increases in March 2022, Defendant Givaudan announced the same in April 2022 and again in July 2022, and both Defendants Symrise and Firmenich confirmed further increases in August 2022.[12] Defendants IFF, Firmenich, and Syrmise again announced seemingly coordinated increases in February and March of 2023.[13]

35.    Second, Defendants' public statements about the success of those price increases suggest the existence of Defendants' cartel.  Defendants have repeatedly boasted that their prices increases grew their fragrance businesses.  In September 2019, for example, the current CEO of Defendant IFF stated that the company had "seen in the last couple of quarters a mid-single-digit growth on the scent business, which was probably driven by – half of it volume growth, half of it price growth."[14]  Regarding 2020, Defendant Symrise's CFO stated "[i]n Scent & Care, 40% of

---

[12] Press Release, Int'l Fragrance & Flavor, IFF Announces Global Price Increases Across All Divisions (Mar. 17, 2022), https://ir.iff.com/news-releases/news-release-details/iff-announces-global-price-increases-across-all-divisions; *Givaudan to Keep Raising Prices After Q1 Sales Grew 4.6%*, Reuters (Apr. 12, 2022, 12:03 AM PDT), https://www.reuters.com/business/retail-consumer/givaudan-keep-raising-prices-after-q1-sales-grew-46-2022-04-12/; Silke Koltrowitz, *Givaudan to Accelerate Price Increases as Input Costs Hit Margins*, Reuters (July 21, 2022, 1:02 AM PDT), https://www.reuters.com/business/retail-consumer/givaudan-confirms-mid-term-targets-works-pass-higher-prices-2022-07-21/; Jagoda Darlak & David Latona, *Symrise Hikes Forecast as Higher Prices, Demand Offset Soaring Costs*, Reuters (Aug. 2, 2022, 2:32 AM PDT), https://www.reuters.com/business/germanys-symrise-raises-sales-outlook-increased-demand-2022-08-02/; Jennifer Well, *Firmenich Posts Record Full-year Top- and Bottom-line Growth*, yahoo! (Aug. 5, 2022), https://www.yahoo.com/lifestyle/firmenich-posts-record-full-top-182010078.html.

[13] *International Flavors & Fragrances Inc. (IFF) Q4 2022 Earnings Call Transcript*, Seeking Alpha (Feb. 9, 2023), https://seekingalpha.com/article/4576967-international-flavors-and-fragrances-inc-iff-q4-2022-earnings-call-transcript; *Firmenich Delivers Strong Results in First Half of Fiscal Year 2023*, Firmenich (Feb. 16, 2023), https://www.firmenich.com/company/press-release/firmenich-delivers-strong-results-first-half-fiscal-year-2023; Jagoda Darlak & Linda Pasquini, *Symrise Shares Slip on Fragrance Cartel Probe*, Reuters (Mar. 8, 2023, 3:24 AM PST), https://www.reuters.com/markets/europe/germanys-symrise-forecasts-stable-profit-margin-2023-2023-03-08/.

[14] *Transcript: International Flavors & Fragrances Inc. Presents at Bernstein 16th Annual Strategic Decisions CEO Conference*, MarketScreener (Sept. 25, 2019), https://www.marketscreener.com/quote/stock/INTERNATIONAL-FLAVORS-F-13047/news/Transcript-International-Flavors-Fragrances-Inc-Presents-at-Bernstein-16th-Annual-Strategic-Dec-37916407/.

the organic growth was pricing."[15]  Defendant Givaudan likewise reported in 2020 Q2 that "on a like-for-like basis, our fragrance division grew 4.5%" and that it expected profitability to improve in part because of price increases.[16]  In addition, during its 2020 earnings call, Defendant Firmenich attributed 6% revenue growth in consumer fragrance and overall increased profitability to "successful pricing initiatives."[17]  As recently as earlier this year, the Defendants continued to report business growth driven by successful price increases.[18]

36.     Defendants' highly profitable increases would not have been possible in a competitive market, where customers respond to rising prices by moving to less expensive alternatives offered by competitors.  Here, however, each Defendant was able to increase prices without fear of losing customers to another major fragrance manufacturer because the four dominant manufacturers all agreed to join the cartel.

37.     Third, pricing data confirms the cartel's existence.  The U.S. Bureau of Labor Statistics' Producer Price Index for Synthetic Organic Chemicals for Use as Flavor and Perfume measures the change over time in the selling prices received by flavor and fragrance producers.  In the years before the conspiracy, prices were consistently falling.  Starting in 2018, when the cartel first formed, prices stabilized and then increased.  This departure from historically decreasing prices further reveals the cartel's existence.

---

[15] *Symrise AG (SYIEF) CEO Heinz-Jürgen Bertram on 2020 Financial Results – Earnings Call Transcript*, Seeking Alpha (Mar. 19, 2021, 3:18 PM ET), https://seekingalpha.com/article/4412605-symrise-ag-syief-ceo-heinz-jurgen-bertram-on-2020-financial-results-earnings-call-transcript.

[16] *Givaudan SA (GVDBF) CEO Gilles Andrier on Q2 2020 Results - Earnings Call Transcript*, Seeking Alpha (July 21, 2020, 3:33 PM ET), https://seekingalpha.com/article/4359705-givaudan-sa-gvdbf-ceo-gilles-andrier-on-q2-2020-results-earnings-call-transcript.

[17] *Firmenich FY2020 Results Presentation* 6, 9 Firmenich (Aug. 11, 2020), https://img06.en25.com/Web/FirmenichCorporateCenter1/%7B9d9f3b4e-0acc-4b30-962d-5928f45ab012%7D_Firmenich_FY_2020_Results_Transcript.pdf?elqTrackId=265804611036489895ecc66f42fe3100&elqaid=450&elqat=2.

[18] *See, e.g.*, *Givaudan SA (GVDBF) Q4 2022 Earning Call Transcript*, Seeking Alpha (Jan. 25, 2023, 12:37 PM ET), https://seekingalpha.com/article/4572304-givaudan-sa-gvdbf-q4-2022-earnings-call-transcript; *(IFF) Q4 2022 Earnings Call, supra* note 13; *Firmenich Delivers Strong Results*, *supra* note 13.



Source: U.S. Bureau of Labor Stats., *Producer Price Index for Synthetic Organic Chemicals for Use as Flavor and Perfume, Not Seasonally Adjusted*, https://fred.stlouisfed.org/series/WPU061403997 (last visited June 30, 2023).

38.     Critically, the cost of raw materials does not explain the price increases during the Class Period.  Up to 95% of synthetic fragrance ingredients are derived from petroleum.[19]  The chart below shows the difference between pricing for fragrance ingredients (red line) and petroleum (blue line).  Notably, the price of petroleum, a key raw material, does not explain fragrance ingredient pricing during the Class Period.

---

[19] Lisa Paulsen, *The Health Risks of Chemicals in Personal Care Products and Their Fate in the Environment*, Conn. Coll. Chemistry Honors Papers 52 (2015); *see also* Gandhi Rádis-Baptista, *Do Synthetic Fragrances in Personal Care and Household Products Impact Indoor Air Quality and Pose Health Risks*, 13 J. Xenobiotics 121, 122 (2023) ("synthetic scents, primarily derived from petroleum").



Source: U.S. Bureau of Labor Stats., *Producer Price Index for Crude Petroleum and Natural Gas Extraction,* https://fred.stlouisfed.org/series/PCU2111112111111 (updated July 13, 2023); U.S. Bureau of Labor Stats., *Producer Price Index Synthetic Organic Chemicals for Use as Flavor and Perfume, Not Seasonally Adjusted*, https://fred.stlouisfed.org/series/WPU061403997 (updated June 14, 2023).

### C.    Government Investigations Also Support the Existence of Defendants' Cartel.

39.    Defendants are the targets of an international antitrust investigation.

40.    On March 8, 2023, the Swiss Competition Commission announced an antitrust investigation in the fragrance industry.  That announcement disclosed that antitrust enforcers in the European Union, the United Kingdom, Switzerland, and the United States jointly conducted dawn raids at Defendants IFF, Givaudan, Syrmise, and Firmenich.[20]  Antitrust authorities also raided an industry organization, the International Fragrance Association ("IFRA").[21]  Defendant IFF received a grand jury subpoena from the U.S. Department of Justice's Antitrust Division.[22]

---

[20] Competition Commission, *supra* note 1; Press Release, European Commission, Antitrust: Commission Confirms Unannounced Inspections in the Fragrance Sector (Mar.7, 2023), https://ec.europa.eu/commission/presscorner/detail/en/ip_23_1532.

[21] *Id.*; John Gapper, *Investigators Sniff Out the Hidden Fragrance Industry*, Fin. Times (Mar. 17, 2023), https://www.ft.com/content/96dd63ed-f5b9-4d96-9566-5dda30bca163.

[22] IFF, Quarterly Report 25 (Form 10-Q) (May 3, 2023), https://ir.iff.com/static-files/8afb7475-46da-42f2-81e8-24ea54258093.

41.     The antitrust enforcers also disclosed that "suspicions that these undertakings have coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the production of certain fragrances" prompted the investigation.[23]

42.     Each Defendant has confirmed the raids.[24]

43.     The international antitrust investigation targeting Defendants further supports the existence of the cartel alleged in this complaint.   The issuance of a grand jury subpoena to Defendant IFF is particularly significant.   To start, it indicates that the investigation is criminal. According to the Antitrust Division's Manual, before a grand jury subpoena is issued staff assess "the likelihood that, if a grand jury investigation developed evidence confirming the alleged anticompetitive conduct, the Division would proceed with a *criminal* prosecution."[25]   Further, all requests to issue a grand jury subpoena must be approved by the division's entire chain of command, from the relevant field office chief up through the Assistant Attorney General.[26]

**D.     "Plus Factors" Render the Fragrance and Fragrance Ingredient Market Susceptible to the Formation and Maintenance of a Cartel.**

44.     The fragrance and fragrance ingredient market has numerous features, referred to as "plus factors," that are conducive to a cartel and make collusion particularly attractive.   These include (1) high barriers to entry, (2) market concentration, (3) inelastic demand, (4) relative fungibility of fragrances and fragrance ingredients, and (5) numerous opportunities to collude through trade associations.

45.     **High Barriers to Entry.**   New fragrance manufacturers are unlikely to undercut cartel pricing, output, or market allocation because they face high barriers to entering the fragrance

---

[23] Competition Commission, *supra* note 1.

[24] Ludwig Burger & John Stonestreet, *Givaudanm Symrise, DSM Shares Drop on Global Fragrance Cartel Probe*, Reuters (Mar. 8, 2023, 4:31 AM PST), https://www.reuters.com/markets/europe/swiss-antitrust-agency-names-4-firms-fragrances-cartel-probe-2023-03-08/.

[25] U.S. Dep't of Justice, *Antitrust Division Manual* III-82 (updated Apr. 2015) (emphasis added), https://www.justice.gov/sites/default/files/atr/legacy/2015/05/13/atrdivman.pdf .

[26] *Id.* at III-83.

and fragrance ingredient market.  Defendant Syrmise has acknowledged that such barriers exist.[27]
They include the high costs of necessary research and development, establishing global supply
chains, and developing sufficient manufacturing facilities.  New entrants must also overcome non-
cost barriers, such as establishing relationships with customers who have a long history of
"intensive cooperation" with incumbent manufacturers.[28]  Individual customer relationships are
particularly critical because "the majority of products and recipes are manufactured specifically
for individual customers."[29]

46.     **Market Concentration.**  The fragrance and fragrance ingredient market is highly
concentrated.  Defendants, the four dominant manufacturers, control 64% of the global AFF
market.[30]  As of 2021, Defendants controlled more than 70% of the North American fragrance
market.[31]  Those shares are presumably the same in the U.S. Fragrance market, which comprises
the vast majority of the North American market.  Such market concentration facilitates collusion
by increasing the benefit of joining a cartel.  If a market is comprised of a large number of firms,
then the gain for an individual firm from undercutting the cartel and gaining market share is large
relative to that firm's share of the cartel profits.  But if there are fewer firms in a market, then a
firm's greater share of the cartel profits will outweigh the short term benefit of undercutting the
cartel for a temporary increase in market share.

47.     **Inelastic Demand.**  Elasticity of demand is an economic concept that relates
sensitivity of demand to changes in price.  Demand for a product is elastic when most consumers
switch to substitutes, *i.e.*, similar products, in response to a price increase.  Conversely, demand is
inelastic when most consumers continue to buy a product despite a price increase.  Demand for
fragrances and fragrance ingredients is inelastic because no reasonable substitutes exist.  No other
product can give perfume or a consumer product a pleasing scent.  Nor is it possible to forego

---

[27] Symrise, *supra* note 5 at 120.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 121.
[31] FSAC, *supra* note 8.

fragrance.  The sole purpose of many products—like perfume, deodorant, or air freshener—are their scent.  Fragrance also plays a key role in determining consumers' preferences for other fragrance containing products and is even necessary in products marketed as unscented to mask unpleasant odors.  Inelastic demand in this market facilitates collusion because Defendants can increase their prices above competitive levels without fear that their customers will switch to a substitute and offset the benefit of the cartel price.

48.    **Relative Fungibility.**  Fragrances and fragrance ingredients are relatively fungible.  In other words, a particular fragrance compound or fragrance ingredient produced by one manufacturer would be interchangeable with the same produced by another manufacturer.  Indeed, that compound or ingredient would be chemically identical.  Fragrances' fungible nature incentivizes collusion because fragrance manufacturers like Defendants cannot increase their prices in a competitive market without losing share to a cheaper competitor.  By contrast, firms in a market of differentiated products could raise prices in a competitive market because customers will not switch to a cheaper competitor.

49.    **Trade Associations.**  Defendants had numerous opportunities to collude through trade associations.

50.    All defendants are members of IFRA, an industry association for multinational fragrance companies headquartered in Geneva, Switzerland.  Three groups compose IFRA: regular members, multinational fragrance companies; national fragrance associations with members in their respective nations; and supporting members, fragrance manufacturers in countries without a national association.  Defendants are four of IFRA's seven regular members.[32]

51.    Defendants had opportunities to collude at IFRA events, including its annual Global Fragrance Summit.  Similarly, Defendants each have an employee on the IFRA board and IFRA's current chairman is Defendant Syrmise's former chief sustainability officer.[33]

---

[32] *Membership of IFRA*, IFRA, https://ifrafragrance.org/about-ifra/membership (last visited Aug. 2, 2023).

[33] *Key people*, IFRA, https://ifrafragrance.org/about-ifra/our-people (last visited Aug. 2, 2023).

52.     IFRA publishes the IFRA Standards.  Those standards ban, limit, or set criteria for the use of certain fragrance ingredients in a wide range of products, including perfumes and consumer products, for IFRA members.[34]  In 2020, IFRA added "a larger-than-usual number of bans, restrictions and specifications (such as purity criteria) on ingredients" to its standards "inspir[ing] an especially ferocious backlash" among perfume enthusiasts.[35]

53.     The IFRA Standards are determined through collaboration with the Research Institute for Fragrance Materials ("RIFM").[36]  Defendants are also members of RIFM.  Defendant Symrise's Boris Mueller is the chair of RIFM's Advisory Committee.[37]  Defendants IFF, Givudan, and Firmenich each have an employee on that committee as well.[38]  All Defendants also have employees on RIFM's Core Teams, which focus on specific strategic issues.[39]

54.     During the Class Period, Defendants were also members of two North American trade associations, the Fragrance Creators Association ("FCA") and the Fragrance Science Advisory Council ("FSAC").  Defendants were previously members of FCA, which has approximately sixty member companies that span the fragrance industry supply chain.  In recent years, the FCA has focused on increasing transparency in the fragrance industry.  In 2019, for example, the FCA launch The Fragrance Conservatory, an educational website for consumers on the creation, sustainability, and safety of fragrances and fragrance ingredients.[40]  By March, 2021,

---

[34] *IFRA Code of Practice*, IFRA, https://ifrafragrance.org/about-ifra/ifra-code-of-practice (last visited Aug. 2, 2023).

[35] Noy Thrupkaew, *A Big Stink in the World of Perfume*, Wash. Post Magazine (Apr. 21, 2021), https://www.washingtonpost.com/magazine/2021/04/21/perfume-makers-raising-a-stink-over-new-safety-rules/.

[36] *How do we set the IFRA Standards?*, IFRA, https://ifrafragrance.org/safe-use/how-do-we-set-the-ifra-standards (last visited Aug. 2, 2023).

[37] *Our Leadership Teams*, RIFM, https://rifm.org/leadership-teams/ (last visited Aug. 2, 2023).

[38] *Id.*

[39] *Id.*

[40] *Fragrance Creators Catalogues nearly 300 Ingredients, Expanding Best-in-Class Fragrance Education Resource*, Fragrance Creators Ass'n (Feb. 7, 2022), https://www.fragrancecreators.org/fragrance-creators-catalogues-nearly-300-ingredients-expanding-best-in-class-fragrance-education-resource.

however, Defendants left the FCA and jointly founded the FSAC.  Defendants were four of that association's five members.  According to Shawn Blythe, FSAC president and board chairman and then chief integration officer at Defendant IFF, that organization would "play a leading role in defending fragrance ingredients before federal and state policymakers, and potentially also against consumer and special interest criticism."[41]  Defendant IFF terminated its FSAC membership after the dawn raids.[42]

### E.     Defendants Have Ample Motive to Conspire.

55.     Defendants have a strong motive to conspire:  The ability to keep their fragrance formulas confidential is rapidly vanishing.

56.     Historically, fragrance manufactures relied on secrecy to prevent competitors from appropriating their formulas and creating duplicate fragrances.[43]  Today, technologies threaten to reveal once-secret formulas.  Gas chromatography-mass spectrometry (GC-MS) technology can identify the chemical composition of a substance, effectively reverse engineering the formula of a fragrance.

57.     No intellectual property protections prevent fragrance manufacturers from using GC-MS technology to reverse engineer fragrance formulas.  Manufacturers generally cannot patent their fragrance formulas, and while those formulas may be trade secrets, GC-MS technology is not an improper method of learning that information.[44]

58.     Between the lack of intellectual property protections and the increasing accuracy and accessibility of GC-MS technology, well-resourced international corporations like Defendants

---

[41] Laruen Nardella, *World's Biggest Fragrance and Flavor Firms Join Forces to Champion Science in Public Policy*, HBW Insight (Mar. 31, 2021), https://hbw.pharmaintelligence.informa.com/RS151176/Worlds-Biggest-Fragrance-And-Flavor-Firms-Join-Forces-To-Champion-Science-In-Public-Policy.

[42] *See Member Companies*, FSAC, https://fsac.org/about/member-companies (last visited Aug. 2, 2023) (current member page only lists Bath&BodyWorks, DSM-Firmenich, Givaudan, and Symrise).

[43] Charles Cronin, *Lost and Found: Intellectual Property of the Fragrance Industry; from Trade Secret to Trade Dress* 9-10 (NYU J. Intell. Prop. & Ent. L. Working Paper No. 178, 2015).

[44] *Id.* at 8, 15-16.

can reverse engineer their rivals' fragrances and compete for their customers.  But instead of competing, Defendants colluded to fix prices, restrict output, and allocate the fragrance and fragrance ingredient market.

## V.   CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action as a representative of a nationwide class under Federal Rules of Civil Procedure 23(a) and (b)(3).  The Class is defined as follows:

> All persons and entities residing in the United States, who purchased a fragrance or fragrance ingredient directly from a Defendant or their subsidiaries or affiliates during the period January 1, 2018 through the present.

60.    Defendants and their families, directors, officers, legal representatives, heirs, successors, assigns, or any entity in which any Defendant has or had a controlling interest are excluded from the class.

### 1.    Numerosity (Rule 23(a)(1))

61.    The Class is so numerous that joinder of all persons and entities in the class is impracticable.  Members of the Class are widely dispersed throughout the country.  The exact number of Class members can be determined from information in the possession and control of the Defendants, but based on public records, the number of Class members is at least in the hundreds.

### 2.    Commonality (Rule 23(a)(2))

62.    Numerous common issues of law and fact exist and predominate over questions affecting only individual members.  These issues include, without limitation:

> a.    Whether Defendants combined and/or conspired to fix, raise, maintain, or stabilize prices of fragrances and fragrance ingredients sold to direct purchasers in the United States at any time during the Class Period;
>
> b.    If Defendants entered into such a combination or conspiracy, whether that conduct violates Section 1 of the Sherman Act under the *per se*, quick look, or rule of reason modes of analysis;

c.     If Defendants entered into such a combination or conspiracy, whether that conduct has in fact artificially inflated, maintained, or stabilized prices relative to competitive levels;

d.     Whether Plaintiff and members of the Class were injured by Defendants' conduct and, if so, the proper measure of damages; and

e.     The contours of appropriate injunctive relief to remediate the anticompetitive effect of the challenged conduct in the future.

### 3.    **Typicality (Rule 23)(a)(3))**

63.    Plaintiff's claims are typical of the claims of the Class members. Defendants artificially raised prices and restrained trade, and thereby injured all members of the Class in substantially identical fashion.

### 4.    **Adequacy (Rule 23(a)(4) and 23(g))**

64.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are not antagonistic to or in conflict with the interests they seek to represent as Class representative. Plaintiff's counsel is experienced in prosecuting complex antitrust class actions and intends to prosecute this action vigorously.

### 5.    **Rule 23(b)(1)**

65.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual Class members would create a risk of (A) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or (B) adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Specifically, separate actions by individual Class members could produce varying adjudications as to, inter alia, whether Defendants conspired to fix fragrance and fragrance ingredient prices, restrict output, or allocate the market.

6.     **Rule 23(b)(2)**

66.    This action is maintainable as a class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate monetary, injunctive, and other equitable relief in favor of the Class.

7.     **Rule 23(b)(3)**

67.    Questions of law and fact common to the Class members, including legal and factual issues relating to violation and damages, predominate over any questions that may affect only individual Class members, because Defendants have acted on grounds generally applicable to the entire Class.

68.    A class action is also superior to the other available methods for the fair and efficient adjudication of this controversy.  Requiring Class members to pursue their claims individually would invite a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on judicial resources.  Plaintiff knows of no difficultly that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

## VI.   CLAIM FOR VIOLATION OF SECTION ONE OF THE SHERMAN ACT

69.    Plaintiff repeats and realleges all previous allegations as if fully set forth herein.

70.    Defendants formed a cartel to inflate, maintain, or stabilize artificially the price of fragrance and fragrance ingredients from competitive levels, decrease artificially the output of fragrance and fragrance ingredients from competitive levels, and allocate the market for fragrance and fragrance ingredients in violation of Section One of the Sherman Act.  *See* 15 U.S.C. § 1.

71.    Plaintiff and the Class directly purchased fragrances and fragrance ingredients from the Defendants at artificially inflated prices, suffering antitrust injury and damages as a consequence of the Defendants' cartel.

72.    There are no procompetitive justifications for the Defendants' cartel, and any proffered justifications, to the extent legitimate, could be achieved through less restrictive means.

73.     The Defendants' cartel is unlawful under a *per se* mode of analysis.   In the alternative, the Defendants' cartel is unlawful under either a quick look or rule of reason mode of analysis.

## VII.   FRAUDULENT CONCEALMENT

74.     Defendants concealed their conspiracy to restrain trade in the United States fragrance and fragrance ingredient market.   That concealment included pre-textual justifications for price increases.   As a result, Plaintiff and the Class had neither actual nor constructive knowledge of the Defendants' conduct until the international antitrust enforcers disclosed their investigation in March 2023.   Plaintiff and the Class could not have discovered Defendants' cartel before that time, even with reasonable diligence.   Defendants are thus equitably estopped from asserting a statute of limitations defense.

## VIII.   PETITION FOR RELIEF

Plaintiff petitions for the following relief:

1.     A determination that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23, that Plaintiff be appointed class representative, and that Plaintiff's counsel be appointed as class counsel;

2.     A determination that the conduct set forth herein is unlawful under Section 1 of the Sherman Act under either a *per se*, quick look, or rule of reason mode of analysis;

3.     A judgment enjoining Defendants from engaging in further unlawful conduct;

4.     Treble damages to members of the Class for overcharges paid for fragrance and fragrance ingredient purchases;

5.     An award of attorneys' fees and costs;

6.     An award of pre- and post-judgment interest on all amounts awarded;

7.     Injunctive relief; and

8.     Such other relief as the Court deems just and equitable.

## IX.    __JURY DEMAND__

Plaintiff requests a trial by jury on all issues so triable.

Dated: 8/2/2023                              Respectfully submitted,

                                             */s/ Jason Lichtman*
                                             Jason Lichtman
                                             Emily N. Harwell (*pro hac vice* forthcoming)
                                             LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
                                             250 Hudson Street, 8th Floor
                                             New York, NY 10013
                                             Phone:  (212) 355-9500
                                             jlichtman@lchb.com
                                             eharwell@lchb.com

                                             Lin Y. Chan (*pro hac vice* forthcoming)
                                             Katherine Lubin Benson (*pro hac vice*
                                             forthcoming)
                                             Jules A. Ross (*pro hac vice* forthcoming)
                                             LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
                                             275 Battery Street, 29th Floor
                                             San Francisco, CA 94111-3339
                                             Phone: (415) 956-1000
                                             lchan@lchb.com
                                             kbenson@lchb.com
                                             jross@lchb.com

                                             *Counsel for Plaintiff and the Proposed Class*

## LOCAL RULE 11.2 CERTIFICATION

I certify that the matter in controversy in this action is not the subject of any other action pending in any court except for:

1.  *Our Own Candle Co., Inc. v. Givaudan S.A., et al.*, No. 23-cv-02174 (D.N.J.);

2.  *Candle Shoppe of the Poconos, Inc. v. Givaudan S.A., et al.*, No. 23-cv-03049 (D.N.J.);

3.  *B & E Associates, Inc. v. Firmenich S.A., et al.*, No. 23-cv-03050 (D.N.J.);

4.  *Chautauqua Soap Co. v. Givaudan S.A. et al.*, No. 23-cv-03249 (D.N.J.);

5.  *Demeter F.L., Inc. v. Internationat'l Flavors & Fragrances Inc., et al.*, No. 23-cv-03265 (D.N.J.);

6.  *Hanna's Candle Co. v. Internationat'l Flavors & Fragrances Inc., et al.*, No. 23-cv-03266 (D.N.J.);

7.  *Cospro Development Corp. v. Internationat'l Flavors & Fragrances Inc., et al.*, No. 23-cv-03368 (D.N.J.);

8.  *Alexia Dahmes d/b/a Alexia Viola Napa Valley v. Firmenich SA, et al.*, No. 2:23-cv-03547 (D.N.J); and

9.  *Crimson Candle Supplies LLC v. DSM-Firmenich AG, et al.*, No. 2:23-cv-3875 (D.N.J.).

I further certify that the matter in controversy in this action is not the subject of any pending arbitration or administrative proceeding.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   8/2/2023          */s/ Jason Lichtman*
                                 Jason Lichtman